UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DERRICK SMITH, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:12 CV 2089 DDN |
| | ) |
| MICHAEL BOWERSOX, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM**

This action is before the court upon the petition of Missouri state prisoner Derrick Smith for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 5.) For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I. BACKGROUND**

On October 30, 2008, a jury in the Circuit Court of the City of St. Louis found petitioner guilty of three counts of the class B felony first-degree assault (Counts III, V, VII), two counts of the class A felony first-degree assault (Counts IX and XI), and five counts of armed criminal action (Counts IV, VI, VIII, X, and XII).[1] (Doc. 10, Ex. B at 2-3, 80-89.) On December 4, 2008, the circuit court sentenced petitioner as a prior and persistent offender to thirty years imprisonment for each of the three counts of the class B felony first-degree assault (Counts II, V, and VII), thirty years imprisonment for both

---

[1] The jury did not reach a verdict on Count I charging first-degree murder or alternatively second-degree murder. The jury also failed to reach a verdict on Count II, the associated charge of armed criminal action. (Doc. 10, Ex. A at 349.) A mistrial was declared on those counts and the State later dismissed them. (Id., Ex. B at 90, 103.)

counts of the class A felony first-degree assault (Counts IX and XI), and thirty years for each count of armed criminal action (Counts IV, VI, VIII, X, and XII). (Id. at 104-12.) The circuit court further ordered that the sentences for Counts III, V, VI, VII, VIII, IX, X, XI, and XII run concurrently and Count IV run consecutively to the others for an aggregate sentence of sixty years imprisonment. (Id.) On November 17, 2009, the Missouri Court of Appeals affirmed the judgment on direct appeal. (Id., Ex. E); State v. Smith, 297 S.W.3d 641 (Mo. Ct. App. 2009).

On March 1, 2010, petitioner filed in the circuit court a pro se motion for post-conviction relief under Missouri Supreme Court Rule 29.15. (Id., Ex. F at 3-41.) On June 9, 2010, with the assistance of appointed counsel, petitioner filed an amended motion for post conviction relief. (Id. at 42-114.) The circuit court denied petitioner's motion on June 3, 2011. (Id. at 115-22.) On March 20, 2012, the Missouri Court of Appeals affirmed the circuit court's denial of the motion. (Id., Ex. I.); Smith v. State, 388 S.W.3d 178 (Mo. Ct. App. 2012).

On November 7, 2012, petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.)

In denying petitioner's direct appeal, the Missouri Court of Appeals described the facts, viewed in the light most favorable to the verdict, as follows:

> On August 1, 2003, Marlene Freeman (Freeman) received a phone call at the beauty salon where she worked regarding shots being fired on her front porch. Freeman testified that she "immediately" ran out of the salon, jumped in her car, and arrived home approximately two minutes later. As she was running up on her front porch, Freeman saw her son, Vaughn, lying in the doorway. Vaughn had been shot in the side and kept telling Freeman "to call the ambulance." Freeman testified that Vaughn also kept repeating, "I'm going to die, don't let me die." Vaughn told Freeman that "[petitioner] shot him." As a result of the shooting, Vaughn had to undergo emergency surgery and had part of his colon removed.
>
> Officer Rodney Thomas (Officer Thomas), who was working as an evidence technician for the City of St. Louis Police Department, arrived at Freeman's residence to recover evidence from the shooting. Officer Thomas testified he recovered from the area five shell casings, which were 9-millimeter casings.

On March 20, 2004, Freeman was working at another beauty salon in the area when she heard gunshots and ran out the door of the beauty salon. Freeman testified she saw the car that Vaughn was driving coming down the street toward the beauty salon and she saw [petitioner] running in the middle of the street toward a different car. When Vaughn got out of his car, he told Freeman that [petitioner] had "just" shot him in the back.[2]

Doug Eatherton (Officer Eatherton), who was working as an evidence technician for the City of St. Louis Police Department, arrived at the area where Vaughn was shot to recover evidence. Officer Eatherton testified he took pictures of a car that had its rear window "shot out." Officer Eatherton further testified he recovered a bullet from the steering wheel air bag of the car and an unfired shell cartridge from inside of the car. Officer Eatherton testified he also found five shell casings on the street. Most of the shell casings recovered by Officer Eatherton were 9-millimeter. The unfired cartridge was a .357 magnum cartridge.

In the late evening hours of April 10, 2004, George Wilson (Wilson) was at the home of Damon Johnson (Johnson) to watch a boxing match on television. Shortly after the boxing match ended, two friends, Wright and Courtney Moore (Moore), arrived and talked with Wilson about plans for the evening. Moore then gave Wilson a ride to pick up a pizza while Wright got into his car to go home. At the corner, Moore turned one way and Wright turned to go in the opposite direction. While Moore and Wilson were stopped at a traffic light, they saw [petitioner], who was running from his yard toward Moore's car and carrying two guns, which were "a 9 and a .45." [Petitioner] shot at Moore's car, and Moore shot back at [petitioner]. Moore and Wilson "sped" off. Shortly after Wilson got home, he learned that Wright had been shot in his vehicle.

In the early morning hours of April 11, 2004, officers responded to the scene of a shooting where Wright was found dead inside a motor vehicle. Officer Michael Growe (Officer Growe), an evidence technician, testified he went to the scene and recovered three .45 caliber shell casings. An autopsy revealed that Wright had three gunshot wounds. The three

---

[2] The Missouri Court of Appeals included the following footnote 2: "At some point between the two shootings, Freeman encountered [petitioner] at a night club. [Petitioner] told Freeman: 'You keep that little n----r hid good, you better keep him hid good cause if I ever see him, I'm going to kill him.' The trial court allowed the statements to be admitted at trial over defense counsel's objections that they were more prejudicial than probative." (Doc. 10, Ex. E at 3 n.2).

bullets recovered from Wright's body and clothing were retained as evidence and submitted for laboratory analysis.

Later on the morning of April 11, 2004, Wilson, Ronnell Mays (Mays), and John Cancer (Cancer) were standing near the street discussing the murder from the previous evening. While standing there, Cancer saw [petitioner] coming around the corner with two guns in his hands. Cancer suddenly got a "look" and yelled "get out of there." Wilson testified he turned around and saw [petitioner] with the same guns as those he had the previous evening. Mays testified he also turned around and saw [petitioner]. Both Mays and Cancer testified that [petitioner] began to fire his guns. Wilson, Cancer, and Mayes testified that they began to run and were able to escape to safety.[3]

Officer Mark Oman (Officer Oman), an evidence technician, testified he arrived at the scene of the April 11, 2004, shooting and, after searching the area, found a possible bullet hole in a parked vehicle. Officer Oman found seven 9-millimeter shell casings, one .45 caliber shell casing, and a bullet found lodged in the cooler inside that parked vehicle.

Officer David Mendez (Officer Mendez), who worked in the firearm section of the laboratory division of the City of St. Louis Police Department, compared the casings found during this case. Officer Mendez testified that the .45 caliber casings from the scene of the shooting of Wright were fired from the same gun as the .45 caliber casing from the scene of the shooting of Mays, Wilson, and Cancer. Officer Mendez also testified that all of the 9-millimeter casings from the scene of both shootings of Vaughn were fired from the same gun as all of the 9-millimeter casings from the scene of the shooting of Mays, Wilson, and Cancer.

Following the close of all evidence, the jury convicted [petitioner] on Counts III-XII and hung on Counts I and II.[4]

(Doc. 10, Ex. E at 2-5).

---

[3] The Missouri Court of Appeals included the following footnote 3: "As of the time of this incident, Wilson had not yet reported the incident involving himself, Moore, and [petitioner] from the previous evening." (Doc. 10, Ex. E at 5 n.3).

[4] The Missouri Court of Appeals included the following footnote 4: "Later, the state filed a memorandum to *nolle prosequi* Counts I and II." (Doc. 10, Ex. E at 5 n.4).

## II. PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

Petitioner alleges five grounds for relief in this habeas action:

(1) The trial court erred in denying petitioner's motion to sever Counts I-VIII from Counts IX-XII.

(2) The trial court violated petitioner's Due Process Clause rights and Confrontation Clause rights by permitting Marlene Freeman to testify as to hearsay statements made by Tommie Vaughn as those statements were not admissible as excited utterances.

(3) His trial counsel rendered constitutionally ineffective assistance by failing to call an alibi witness to testify in his behalf.

(4) His trial counsel rendered constitutionally ineffective assistance by failing to properly challenge in-court identification by John Cancer.

(5) His appellate counsel rendered constitutionally ineffective assistance by failing to appeal the trial court's evidentiary ruling allowing George Wilson to testify about an uncharged crime implicating petitioner.

(Doc. 1 at 5-12, 16-27.)

Respondent contends that Grounds 1 and 2 are not cognizable grounds for habeas relief and that Grounds 2, 3, 4, and 5 are meritless.

## III. EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for claims made in federal habeas corpus petitions under 28 U.S.C. § 2254. See 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). As discussed above, petitioner filed a direct appeal, a motion for post-conviction relief, and appealed the denial of his motion for post-conviction relief.

Exhaustion in the sense that petitioner now has no remaining procedure for bringing a claim to the state court does not, however, satisfy the federal statutory requirement. Rather, a petitioner must have fairly presented the substance of each federal ground to both the trial and appellate courts. Anderson v. Harless, 459 U.S. 4, 6 (1982). If he has not done so and has no remaining procedure for doing so because he has defaulted on the legitimate requirements of the otherwise available procedures, any such ground for federal habeas relief is barred from consideration by the federal courts. Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc); Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997). The doctrine of procedural bar applies whether the default occurred at trial, on appeal, or during state court collateral attack. See Murray v. Carrier, 477 U.S. 478, 490-92 (1986).

Petitioner raised Ground 1 at the trial level by submitting a motion for severance of Counts IX-XII from Count I-VIII, and the trial court denied the motion. (Doc. 10, Ex. A at 23; id., Ex. B at 12-14.) Petitioner presented Ground 1 to the Missouri Court of Appeals. (Id., Ex. C at 12-13, Ex. E. at 5-7.) Ground 1 is not procedurally barred.

Petitioner raised Ground 2 at the trial level by objecting to the testimony as hearsay and as a violation of petitioner's right to confrontation when the evidence was offered; the trial court overruled the objections. (Id., Ex. A at 145-47, 149, 151-52.) Petitioner presented Ground 2 to the Missouri Court of Appeals. (Id., Ex. C at 14-15, 27-33, Ex. E at 7-9.) Ground 2 is not procedurally barred.

Petitioner raised Ground 3 in his amended post-conviction relief motion, and the motion court ruled that the claim was without merit. (Id., Ex. F at 4, 43-45, 118.) Petitioner presented Ground 3 to the Missouri Court of Appeals in his post-conviction relief appeal. (Id., Ex. G at 14-15, 19-25, Ex. I at 3-4.) Ground 3 is not procedurally barred.

Petitioner raised Ground 4 in his amended post-conviction relief motion, and the motion court ruled that the claim was without merit. (Id., Ex. F at 46-47, 63-71, 119.) Petitioner presented Ground 4 to the Missouri Court of Appeals in his post-conviction relief appeal. (Id., Ex. G at 18, 36-44, Ex. I at 5-6.) Ground 4 is not procedurally barred.

Petitioner raised Ground 5 in his amended post-conviction relief motion, and the motion court ruled that the claim was without merit. (Id., Ex. F at 45-46, 54-63, 119.) Petitioner presented Ground 5 to the Missouri Court of Appeals in his post-conviction relief appeal. (Id., Ex. G at 16-17, 26-35, Ex I at 6-7.) Ground 5 is not procedurally barred.

## IV. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted by a federal court on a claim that has been decided on the merits by a state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Thaler v. Haynes, 130 S.Ct. 1171, 1174 (2010) (per curiam) (citation omitted). This standard is difficult to meet because habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (citation omitted). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Thaler, 130 S.Ct. at 1174.

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Wood v. Allen, 130 S.Ct. 841, 845 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011). Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); Wood, 130 S.Ct. at 845.

## V. DISCUSSION

### A. Ground 1

In Ground 1 petitioner argues that the trial court erred in denying the motion to sever Counts IX-XII from Counts I-VIII. Specifically, petitioner argues that the counts were improperly joined, because the different charges involved different complaining witnesses. He also argues that the trial court should have severed the counts due to the substantial prejudice for Counts IX-XII resulting from the strength of the prosecution's case for Counts II-VIII.

The issues of joinder and severance are matters of state law. "[F]ederal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991); 28 U.S.C. § 2254. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions." Estelle, 502 U.S. at 67-68. Rather, "[t]o obtain federal habeas corpus relief, the joinder "must actually render petitioner's state trial fundamentally unfair and hence, violative of due process." Robinson v. Wyrick, 735 F.2d 1091, 1094 (8th Cir. 1984) (quoting Tribbitt v. Wainwright, 540 F.2d 840 (5th Cir. 1976), cert. denied, 430 U.S. 910 (1977)).

Under Missouri law, "Joinder addresses the issue of what crimes can be charged in a single proceeding." State v. Chambers, 234 S.W.3d 501, 508 (Mo. Ct. App. 2007). Missouri courts may join:

> [a]ll offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan . . . .

Mo. Sup. Ct. R. 23.05. Petitioner argues that the court should not have joined the charges because the charges involved different witnesses. However, petitioner's argument does not detract from the similar character of his charged offenses. See State v. Langston, 889 S.W.2d 93, 96 (Mo. Ct. App. 1994). The state court did not err in joining the charges.

"Joinder and severance are distinct issues for review." State v. Langston, 889 S.W.2d 93, 96 (Mo. Ct. App. 1994).

> The key question in determining whether severance should be granted is one of prejudice. The defendant must make a particularized showing of substantial prejudice. There must be both an abuse of discretion and a clear showing of prejudice before a denial of severance can be reversed. In determining prejudice the court should consider, among other relevant factors, the number of offenses charged, the complexity of the evidence, and whether the trier of fact is able to distinguish the evidence and apply the law intelligently to each offense.

State v. Hughes, 787 S.W.2d 802, 804 (Mo. Ct. App. 1990).

> In petitioner's case, the Missouri Court of Appeals ruled:
>
> Here, the joined offenses are the same: assault in the first degree (and a murder resulting from an assault) and armed criminal action. Three of the incidents occurred within several weeks of each other while the remaining assault involved the same victim as one of the other assaults. All of the offenses occurred within several blocks of each other. In the assaults, the same gun was used. Also, the same gun used in one of the assaults was used in the murder. Based on the State's evidence, joinder was proper.
>
> Finally, trying the offenses together did not result in substantial prejudice. Contrary to [petitioner's] assertions that the trial court abused its discretion in overturning [petitioner's] motion to sever "because the number of charged offenses and the evidence's complexity," the fact that the jury failed to reach a verdict on Counts I and II demonstrates that they did keep the incidents separate. [6] [Footnote 6: "As part of its instructions, the jury was directed that each count was to be considered separately."] We find no abuse of discretion. Point I is denied.

(Doc. 10, Ex. E at 7.)

As stated, the merits of petitioner's Ground 1 depend upon whether his right to due process was violated; this depends upon whether the state trial court failed to exercise

sound discretion in ruling this ground and whether that ruling made a substantial difference in the outcome of his trial. Robinson v. Wyrick, 735 F.2d at 1094. Clearly, petitioner has failed on each aspect of this ground for relief. The jury instructions directed that each count was to be deliberated upon separately, and the jury's failure to reach a verdict on Count I and Count II demonstrates that the jury deliberated on the incidents separately as instructed. (Doc. 10, Ex. A at 349, Ex. B at 57, 90.) Moreover, the evidence adduced at trial was not complex, consisting of the testimony of eyewitnesses, police officers forensic examiners, and ballistics experts. (Id., Ex. A.) Therefore, the state courts did not unreasonably apply federal law by concluding that the trial court did not abuse its discretion and that no prejudice resulted from trial court's failure to sever the charges. Ground 1 is without merit.

**B. Ground 2**

Petitioner argues that the trial court erred by allowing Marlene Freeman to testify to hearsay statements made by Vaughn, her son, as those statements were not admissible as excited utterances and that the court violated petitioner's due process right to a fair trial and right to confrontation.

During the trial Freeman testified to two separate statements made by her son Vaughn following two different shootings. Freeman testified that on August 1, 2003 immediately after being shot in the side, Vaughn repeatedly told her that he was going to die and that petitioner shot him. (Doc. 10, Ex. A at 148-49.) On March 20, 2004, Vaughn was the victim to a second shooting and prior to receiving medical assistance, told Ms. Freeman that petitioner shot him again. (Id., at 151.)

Petitioner argues that Ms. Freeman's testimony violated his rights under the Due Process Clause as her testimony contained hearsay statements made by Vaughn and those statements were not admissible as excited utterances.

The application of the rules of evidence is a matter of state law. Under AEDPA habeas review, to determine whether a state court committed error by admitting evidence, courts consider whether the state court's decision was an objectively unreasonable

application of the Due Process Clause rather than whether the evidence was properly admitted under state law. Middleton v. Roper, 498 F.3d 812, 820 (8th Cir. 2007). If such error is shown, a petitioner must further show that the asserted error was "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair." Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987). To meet this burden, a petitioner must show a reasonable probability that the verdict would have been different absent the asserted error. Id.

At trial, petitioner objected to Ms. Freeman's testimony regarding Vaughn's statements following the shootings as hearsay. The trial court admitted the challenged statements under the excited utterance exception to the hearsay rule. (Doc. 10, Ex. A at 147.) The excited utterance exception applies when a startling event or condition occurs, the statement is made while the declarant is still under the stress of the excitement caused by the event and has not had the opportunity to fabricate the story, and the statement relates to the startling event. State v. Kemp, 212 S.W.3d 135, 145 (Mo. banc 2007). In determining whether a statement is an excited utterance, the trial court considers many factors including the time between the event and the statement, whether the statement was in response to a question, whether the statement is self-serving, and the declarant's physical and mental condition at the time of the statement. Id.

The state appellate court upheld the trial court's admission of Vaughn's statements under the excited utterance exception the hearsay rule. The court concluded that "[f]rom the record it was reasonable for the trial court to conclude that both statements were spontaneous and made shortly after the incidents in question under circumstances indicating that Vaughn was still under stress of being shot." (Doc. 10, Ex. E at 9.)

As to the shooting occurring in August 2003, there is no indication that Ms. Freeman nor anyone else asked Mr. Vaughn to name the shooter. Freeman testified that she went home immediately after being informed of the shooting involving Mr. Vaughn. (Doc. 10, Ex. A at 144.) Upon arriving home she encountered Vaughn on her porch, and he mentioned several times he was going to die and that petitioner had shot him. (Id., at 148-149.) The Missouri Court of Appeals noted that "it was reasonable for the trial court

to infer that a short period of time had passed from Vaughn being shot to the statements made to Freeman and that these statements qualified as excited utterances." (Id., Ex. E at 9.) In regards to the other factors, Ms. Freeman testified that Vaughn was extremely distressed after the shooting and while calling for the paramedics she tried to calm him. (Id., Ex. A at 148-149.) Furthermore, upon arriving to the hospital, Vaughn underwent immediate surgery for about seven hours to remove part of his intestine, illustrating the severity of his injuries. (Id., at 149.) The record indicates that he was still under the stress of excitement following the shooting and that only a minimal amount of time had passed, indicating that the exciting influence had not dissipated.

Regarding the March 2004 shooting, Vaughn's statements to Freeman were made within one minute of Vaughn's being shot. (Id. at 151-52.) In the totality of the circumstances surrounding the second shooting, it was reasonable for the trial court to find that Vaughn was still under stress from being shot in the back when he immediately got out of his car and stated that the petitioner had shot him. (Id.) The Missouri Court of Appeals agreed. (Id., Ex. E at 9.)

Accordingly, petitioner fails to show that the appellate court's decision to affirm the trial court's admission of Ms. Freeman's testimony regarding Vaughn's statements was an objectively unreasonable application of the Due Process Clause.

Petitioner also alleges that the admission of Freeman's testimony violated his right to confrontation. The Sixth Amendment to the U.S. Constitution states that in all "criminal prosecutions, the accused shall enjoy the right… to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has ruled that the Confrontation Clause applies only to testimonial statements and that states are free to adopt their own hearsay rules for non-testimonial hearsay. Crawford v. Washington, 541 U.S. 36, 68 (2004).

> An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a causal remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out of court statement.

Id. "In determining whether a statement implicates the Confrontation Clause, the crucial inquiry is whether the record was 'created . . . for the purposes of establishing or proving some fact at trial.'" United States v. Brooks, 715 F.3d 1069, 1079 (8th Cir. 2013) (quoting Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324 (2009)).

The statements made by Vaughn to Ms. Freeman after being shot on both August 1, 2003 and March 20, 2004 were not testimonial statements. They were not given to a police officer or another law enforcement official, but rather were spoken to his mother and they lack the formality associated with testimonial statements. Although the state appellate court did not address petitioner's Confrontation Clause argument, it found reasonable the trial court's determination that the statements were spontaneous for hearsay purposes. (Doc. 10, Ex. E at 9.) Anticipating his own death, Vaughn made the statements to his mother immediately after suffering severe injuries caused by gunshots. Although the prosecution used Freeman's testimony regarding her son's statements to link petitioner to the assaults, considering his critical state, the record indicates Vaughn did not utter them to Freeman to establish facts at a later trial but did so in panic or with hopes of obtaining medical assistance or comfort from his mother. Thus, Ms. Freeman's testimony regarding Vaughn's statements does not violate the Confrontation Clause, and petitioner's argument is without merit. Ground 2 is without merit.

**C. Grounds 3 and 4**

In Ground 3, petitioner argues that the post conviction motion court and the Missouri appellate court erred in denying his Rule 29.15 motion without an evidentiary hearing. Habeas relief is available only where errors of a constitutional magnitude have occurred. Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir. 1994). The Constitution does not guarantee the right to post-conviction relief. Pennsylvania v. Finley, 481 U.S. 551, 557 (1987). Nor does the Constitution guarantee the right to an evidentiary hearing during state court post-conviction relief proceedings. Smith v. Lockhart, 882 F.2d 331, 334 (8th

Cir. 1989). Thus, petitioner's argument regarding the denial of an evidentiary hearing is not cognizable.

Petitioner further argues that his trial counsel's failure to call Damon Scott as an alibi witness to testify violated his constitutional right to effective assistance of counsel. Petitioner alleges that Mr. Scott would have testified that Vaughn's shooter wore a mask, rendering the shooter impossible to identify.

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court determined that the right to effective assistance of counsel arises from the Sixth and Fourteenth Amendments. Under <u>Strickland</u>, a petitioner is entitled to federal habeas corpus relief upon a showing that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Id.</u> at 686.

Petitioner must prove two elements to prevail on a claim of ineffective assistance of counsel. First, petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. <u>Id.</u> at 687–88. There is a strong presumption that counsel has rendered constitutionally effective assistance. <u>Id.</u> at 690; <u>Blackmon v. White</u>, 825 F.2d 1263, 1265 (8th Cir. 1987). Counsel's strategic choices made after thorough investigation are virtually unchallengeable, and decisions following reasonable, but less thorough, investigation are to be upheld to the extent that they are supported by reasonable judgment. <u>Strickland</u>, 466 U.S. at 690–91. Second, petitioner must demonstrate actual prejudice by counsel's deficient performance. <u>Id.</u> at 687. To show prejudice, petitioner must establish that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>

According to petitioner, Mr. Scott would have testified that the shooter was wore a mask and because of the mask it would have been impossible to identify the shooter. Petitioner claims that this testimony would have supported the defense that he was not the assailant, and therefore, had counsel called Scott to testify at trial petitioner would have been acquitted.

The state appellate court found that Scott's proposed testimony would have established only that he could not identify the assailant, not that the assailant was not petitioner. (Doc. 10, Ex. F at 44-54, Ex. I at 4.) The court concluded that Scott's testimony would not have provided petitioner with a viable defense, but rather would have only contradicted the testimony of Ms. Freeman regarding Mr. Vaughn and Mr. Scott's statements that petitioner was the shooter in March 2004. Id.

This court agrees that Mr. Scott's testimony would not have shown that petitioner was innocent. Even if Scott's expected testimony was true, it would have had little impeachment value and likely would not have altered the result of the trial. Even disregarding Ms. Freeman's testimony that Vaughn and Scott identified the petitioner as the assailant in the March 2004 incident, the state presented much other evidence of petitioner's guilt. Vaughn had identified petitioner as the shooter in the August 2003 assault and the same gun was used in both shootings. (Id., Ex. A at 149, 166-67, 172-73, 239-40.) Moreover, petitioner had previously threatened to kill Vaughn. (Id., at 156.) Finally, ballistic evidence indicated that three weeks after the March 2004 shooting, petitioner possessed the gun that was used to shoot Vaughn. (Id., at 166-67, 172-73, 228-29, 239-40.) There is no reasonable probability that petitioner would have been acquitted had counsel called Scott to testify at trial. Therefore, even assuming his trial counsel's deficient performance, petitioner fails to show actual prejudice.

In Ground 4, petitioner argues that his trial counsel rendered constitutionally ineffective assistance by failing to properly challenge the in-court identification testimony by John Cancer, because Cancer had been influenced by his conversation with co-witnesses George Wilson and Ronnell Mays the day before he testified at trial, and by defense counsel's failing to arguing the error in the motion for a new trial.

According to petitioner, had trial counsel timely objected to Mr. Cancer's in-court identification on the ground that the procedure was unduly suggestive, there is a reasonable probability that the trial court would have sustained the motion to suppress and excluded the evidence of identification and therefore the jury would have acquitted him.

The state appellate court held that petitioner's claims did not warrant relief. (Doc 10, Ex. I at 6.) This was because trial counsel sought pretrial relief in a motion in limine and because he objected to Mr. Cancer's identification testimony. (Id. at 5.) Additionally, the court concluded that, although trial counsel did not preserve the error in his post-trial motion for a new trial, the failure to preserve an error for appellate review was not a cognizable claim. (Id. at 6.)

Petitioner argues that the in-court identification prejudiced him, because he would have been acquitted had the identification been suppressed. However, witnesses Mays and Wilson both made in-court identifications and testified that petitioner was the assailant in the shootings. (Id., Ex. A at 206, 264.) Petitioner further alleges that witness Cancer could not identify petitioner following the shooting in 2004 and his identification testimony was the product of Mr. Cancer's conversation with Mr. Mays and Mr. Wilson on the eve of trial in 2008.

These facts afford petitioner no relief, even if true. The asserted conversation among the witnesses involved private citizens, Mr. Cancer and his friends; none of them was a state actor. When the suggestive conduct comes from private citizens rather than state actors, there is no basis to suppress the identification. Perry v. New Hampshire, 132 S.Ct. 716, 720-21 (2012); State v. Body, 366 S.W.3d 625, 630-31 (Mo. Ct. App. 2012). Rather, the in-court identification must be shown to the factfinder to be unreliable. Id. The record indicates that defense counsel cross-examined Mr. Cancer and argued to the jury that his testimony came after his conversation with Mays and Wilson. (Doc. 10, Ex. A at 254-57, 259, 327-29.)

Accordingly, Ground 3 and Ground 4 are without merit.

**D. Ground 5**

In Ground 5, petitioner argues that his appellate counsel was constitutionally ineffective by failing to appeal the trial court's evidentiary ruling allowing George Wilson to testify about an uncharged crime implicating petitioner. More specifically, petitioner alleges that this testimony was improper propensity evidence and, therefore,

-16-

had counsel asserted trial court error in this regard on direct appeal, the Missouri Court of Appeals would have granted him relief.

In Smith v. Robbins, 528 U.S. 259, 285 (2000), the Supreme Court determined that in order to prove ineffective assistance of appellate counsel a petitioner must fulfill the Strickland requirements by showing that his counsel was unreasonably deficient and that his defense was prejudiced by his deficiency. "When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain an ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims." Link v. Luebbers, 469 F.3d 1197, 1205 (8th Cir. 2006) (citing Smith, 528 U.S. at 288). "Because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held ineffective for failing to raise every conceivable issue." Id. at 1205. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986), cited with approval in Smith, 528 U.S. at 288.

Petitioner's underlying claim regarding the admissibility of evidence is one of state of law. A federal habeas court must accept the rulings of a state court on matters of state law. Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994). Under Missouri Law, evidence of uncharged crimes and prior misconduct of a defendant is admissible in court "if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial . . . and if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect." State v. Clover, 924 S.W.2d 853, 855 (Mo. banc 1996). Evidence of other crimes is "generally deemed admissible when it has the tendency to establish motive, intent, absence of mistake or accident, common scheme or plan, or identity of the accused." State v. Stanley, 952 S.W.2d 327, 330 (Mo. Ct. App. 1997).

The state court found that petitioner's claim lacked merit because Mr. Wilson's testimony was relevant to the issue of identity by demonstrating a common scheme or plan and a sequence of events prior to the charged crime. (Doc. 10, Ex. I at 7.) The state

court also discussed that the charged crime in question was a murder charge for which petitioner was not convicted, providing evidence that petitioner suffered no prejudice from the testimony. (Id.) The Missouri Court of Appeals stated "any error in admission of this evidence would have been harmless error, thereby further precluding any finding of prejudice from the failure to brief this claim."  (Id.)

Because this issue was held to be meritless under state law, appellate counsel did not act unreasonably when opting to omit this issue from the appeal and instead focusing on stronger arguments. Additionally, as noted by the Missouri Court of Appeals, there was no reasonable probability that the result on appeal would have been different had this issue been raised on appeal.

Accordingly, Ground 5 is without merit.

## VI. CONCLUSION

For the reasons stated above, the petition of Derrick Smith for a writ of habeas corpus is denied. Because petitioner has made no substantial showing of the denial of a constitutional right, the court does not issue a certificate of appealability. 28 U.S.C. § 2253(c)(2).

An appropriate Judgment Order is issued herewith.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on April 8, 2014.